UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  18-80513-CV-ROSENBERG
MAGISTRATE JUDGE REID

ROOSEVELT MONDESIR,

     Petitioner,

v.

MARK S. INCH,

     Respondent.

     _____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

This Cause is before the Court upon Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, which challenges the constitutionality of his convictions and sentences for attempted first degree murder and domestic aggravated assault, following a jury trial in case no. 2012-CF-006456 in the state circuit court in and for Palm Beach County, Florida. [ECF No. 1]. For the reasons detailed below, the Petition should be denied.

This Cause has been referred to the Undersigned for consideration and report, pursuant to S.D. Fla. Admin. Order 2019-02 and all applicable Rules Governing Habeas Corpus Petitions in the United States District Courts. [ECF No. 12].

## II. Claims

Construing the arguments liberally, as afforded to *pro se* litigants pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raised the following claims:

> 1. Counsel was ineffective for misadvising Petitioner of his right to testify as to his own defense;
>
> 2. Counsel was ineffective for failing to rely upon a heat of passion of voluntary abandonment defense;
>
> 3a. Counsel was ineffective during the guilt phase for failing to investigate and present Petitioner's mental health issues which would have supported an insanity defense;
>
> 3b. Counsel was ineffective during the penalty phase for failing to investigate and present Petitioner's mental health issues which would have served as a mitigating sentencing factor;
>
> 4. Counsel was ineffective for failing to convey a fifteen-year plea offer which Petitioner would have accepted;
>
> 5. The sentence is vindictive in nature in response to Petitioner exercising his constitutional right to have his case heard at trial.

[ECF No. 1]; [ECF No. 1-1].

## III. Factual Background

Prior to the crime at issue in this case, Petitioner and the victim, Naomi Bretton, were friends and were even related to each through their former marriages. [ECF No. 9-1, at 214]. Petitioner, Ms. Bretton, and Ms. Bretton's former husband resided together. [*Id.* at 215-16]. After Ms. Bretton's former husband left the home,

Petitioner stayed there and assisted Ms. Bretton in raising her and her former husband's two sons. [*Id.*]. Ms. Bretton and Petitioner also had a child together. [*Id.* at 216, 218].

In April of 2011, Ms. Bretton became depressed after the death of her mother. [*Id.* at 218]. She testified that rather than help her overcome her grief, Petitioner accused her of cheating. [*Id.*]. Before the death of Ms. Bretton's mother, Petitioner and Ms. Bretton jointly participated in sexual activities with multiple persons. [*Id.* at 219]. Ms. Bretton never had a sexual encounter without Petitioner participating. [*Id.* at 220-21]. Petitioner, however, had a sexual affair with another woman. [*Id.*].

After Ms. Bretton discovered the affair, Petitioner and Ms. Bretton began sleeping in separate bedrooms. [*Id.* at 221-23]. In March of 2012, Ms. Bretton hit Petitioner in response to Petitioner allegedly striking her first. [*Id.* at 223]. Due to this altercation, Ms. Bretton was arrested and ordered to keep away from her children while they resided with Petitioner. [*Id.* at 224]. The domestic battery charges were dropped against Ms. Bretton. [*Id.* at 224-25]. Ms. Bretton for some time resided in a motel and then later in an apartment close to her former residence. [*Id.* at 226-27].

On one occasion, law enforcement was dispatched to Petitioner's residence because he was seen breaking a computer, throwing a telephone onto the roof of the house, and burning a cellphone. [*Id.* at 227-28]. One of the children escaped the home through a window and called Ms. Bretton from a neighbor's house. [*Id.*]. Ms.

Bretton testified that she called the Florida Department of Children and Families (DCF) to report Petitioner. [*Id.* at 228].

As a result, Ms. Bretton was given primary custody of the three children, and Petitioner had weekend custody of the youngest child—his biological son. [*Id.* at 229-30]. According to Ms. Bretton, Petitioner released the air out of her tires and removed the lug-nuts from her vehicle's tires a few weeks before the crime at issue. [*Id.* at 230]. He also made numerous threats over the phone during May of 2012. [*Id.* at 231].

On June 10, 2012, Ernest Jean-Jacques, Ms. Bretton's uncle, received a voicemail from Petitioner. [*Id.* at 284-87]. In the message, Petitioner said, "your niece [is] playing with fire." [*Id.* at 287]. The following day, Petitioner and Ms. Bretton arranged to exchange custody of their youngest son at a 7-11 gas station. [*Id.* at 233-34, 246]. Ms. Bretton arrived first, pumped gas into her vehicle, and waited for Petitioner. [*Id.* at 248-49]. When Petitioner's vehicle pulled up, Ms. Bretton noticed her son was not in the vehicle. [*Id.* at 249]. Ms. Bretton then saw Petitioner holding a knife. [*Id.* at 250]. Petitioner exited his vehicle holding the knife and a gas can. [*Id.*].

Petitioner began pouring gasoline onto Ms. Bretton's vehicle. [*Id.*]. She called 911. [*Id.*]. Petitioner reacted by chasing Ms. Bretton in order to douse her in gasoline. [*Id.* at 251-52]. Her face, hair, body, and clothing were wet with gasoline. [*Id.*]. Ms.

Bretton ran into the gas station and tried to hold the door shut. [*Id.* at 252-53]. Petitioner hit Ms. Bretton's hand with the knife, opened the door, and pulled her outside. [*Id.* at 253]. The two struggled as Ms. Bretton tried to escape. [*Id.*]. Ms. Bretton testified that Petitioner reached into his pocket two times during the struggle before she heard a "click." [*Id.*]. Upon hearing this "click," Ms. Bretton was covered in flames. [*Id.*].

Ms. Bretton removed her top and began patting out the fire on her. [*Id.* at 253-54]. Once she was able to put out the fire, Ms. Bretton went into the gas station and waited for medical assistance. [*Id.* at 255]. Surveillance footage of the incident was played before the jury. [*Id.* at 256-59].

Medic Travis Kus, who was dispatched to the scene, testified that he immediately observed second-degree and third-degree burns on Ms. Bretton. [ECF No. 9-1, at 294-98]. He noted that her pants and belt were melted together. [*Id.* at 299-300]. Ms. Bretton described the burns she had on her chest, face, arms, and stomach. [*Id.* at 261-62].

Officer Steven Schoenfeld testified that, while at the 7-11 after the incident, he saw Petitioner "hiding in some bushes." [*Id.* at 308]. Officer Schoenfeld assisted in removing Petitioner from the bushes, searched him, and placed him in the back of his police vehicle. [*Id.* at 309]. He stated Petitioner refused to walk on his own. [*Id.* at 313]. Petitioner also made various statements, such as "I'm already dead, just put

3 bullets in my head" and "I'm dead since February 24th. I want to be dead[.]" [*Id.* at 311]. Petitioner was taken to a hospital due to some minor injuries. [*Id.* at 309-10]. Officer Schoenfeld was present when a doctor filled out a Baker Act form for Petitioner. [*Id.* at 311-12].

## IV. Procedural History

Following a jury trial, Petitioner was convicted of attempted first degree murder on Count One, and the jury further found that Petitioner carried, displayed, used, threatened to use, or attempted to use a weapon during the commission of the crime. [ECF No. 8-1, at 5-6, 8-9]. As to Count Two, Petitioner was convicted of domestic aggravated assault with a deadly weapon. [*Id.*]. Petitioner received a sentence of life imprisonment on Count One and a concurrent 5-year imprisonment on Count Two. [*Id.* at 11-14].

On appeal, Petitioner argued:

> (1) The trial court erred in overruling a best evidence objection to testimony about the content of an available recorded telephone message left by Petitioner;
>
> (2) The evidence was legally insufficient to prove premeditated intent to kill, and the judgment of acquittal should have been granted reducing the charge to a lesser offense;
>
> (3) The judgment must be corrected to conform to the verdict.

[*Id.* at 20-54]. The District Court of Appeal affirmed Petitioner convictions and further found that there was "ample evidence" of Petitioner's premeditated intent to

6

kill. [*Id.* at 99]. A limited remand was ordered to delete the judgment of conviction's reference to a "deadly weapon," as the jury found Petitioner carried, displayed, used, threatened to use, or attempted to use "a weapon." [*Id.* at 99-100]. Petitioner did not seek further review. The corrected judgment was entered on November 18, 2015 indicating that the order was entered *nunc pro tunc* to the date of the original order. [*Id.* at 104].

On August 13, 2015, Petitioner filed a petition for writ of habeas corpus arguing his appellate counsel was ineffective in the Fourth District Court of Appeal pursuant to Fla. R. App. P. 9.141. [*Id.* at 106-112]. The petition was denied on August 17, 2015. [*Id.*at 117-18].

On May 27, 2016, Petitioner filed a Rule 3.850 Motion for Postconviction relief. [*Id.* at 119-30]. The state circuit court denied all claims without evidentiary development. [*Id.* at 169-76]. Although Petitioner appealed, the Fourth District Court of Appeal affirmed in an unreasoned opinion and appears to have concurred to the outcome. [*Id.* at 189]. Petitioner filed a motion for rehearing or for rehearing *en banc*, which was also denied. [*Id.* at 191-97, 199]. The mandate issued on January 26, 2018. The instant Petition was docketed on April 18, 2018. [ECF No. 1].

## V. Timeliness

Stated broadly, an application for a writ of habeas corpus under 28 U.S.C. § 2254 must be filed before a 1-year time limitations period expires, and this limitation

period usually runs from the date the challenged judgment became "final." 28 U.S.C. § 2244(d). In this case, the parties do not dispute timeliness of the Petition. *See* [ECF No. 7, at 6].

## VI. Exhaustion

Pursuant to 28 U.S.C. 2254(b)-(c), petitioners must exhaust their claims before presenting them in a federal habeas petition. When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court. *Mason v. Allen*, 605 F.3d 1114, 1119-20 (11th Cir. 2010) (relying upon 28 U.S.C. § 2254(b)-(c)). Respondent acknowledged that it does not dispute that Petitioner's claims have been exhausted. [ECF No. 7, at 7-8]. The Court, therefore, treats the claims as exhausted. *See* 28 U.S.C. § 2254(b)(3) (requiring an explicit waiver of the exhaustion defense).

## VII. Standard of Review

Several limits exist on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The most restrictive limit is that found in § 2254(d). As amended by the AEDPA, pursuant to § 2254(d), a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1)

contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (internal brackets omitted). A state court's decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Consalvo*, 664 F.3d at 844 (quoting *Williams*, 529 U.S. at 413). Importantly, AEDPA's deferential standard under § 2254(d) applies only whenever state court proceedings adjudicated a claim on the merits. *See Cullen*, 563 U.S. at 181.

To qualify as an adjudication on the merits, very little is required. In fact, federal courts should presume that § 2254(d)'s deference applies. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed

that the state adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Even where there was a summary denial and no reasons for the denial of relief were articulated by the state trial court, such a ruling is also presumed to be an adjudication on the merits. *Id.* at 100; *see also Gill v. Mecusker*, 633 F. 3d 1272, 1288-89 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference).

"The presumption [in favor of a merits ruling existing] may be overcome" only "when there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99-100 (relying upon *Ylst v. Nunnemarker*, 501 U.S. 797, 803 (1991).

Recently, in *Wilson v. Sellers*, 138 S. Ct. 1188, 1192-94 (2018), the Supreme Court held there is a "look through" presumption in federal habeas corpus law, as silence implies consent. This means federal courts should rely upon the "last related state-court decision" that provides a relevant rationale when the highest state court's adjudication on the merits of a claim is unaccompanied by an explanation. *See id.* at 1192. Put into practice, *Wilson* clarifies the reasoning that is presumptively afforded § 2254(d)'s deference.

But if the highest state court provides an "unexplained decision on the merits," and there is no lower court decision to "look through," federal courts may turn to the

"could have supported" standard set forth in *Richter* when there are "convincing grounds to believe the silent court had a different basis for its decision than the analysis followed by the previous court[.] *See Wilson*, 138 S. Ct. at 1195-97 (explaining *Richter* controls when there is no reasoned decision and the decision of a lower court cannot be looked to as the reasoning of the highest state court). Under that framework, this Court must determine whether there are any arguments or theories that "*could have supporte[d]* the state court's decision" and "ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision[.]" *Richter*, 562 U.S. at 102 (emphasis added).

## VIII. Discussion

A. <u>Applicable Legal Principles</u>

The Sixth Amendment affords a criminal defendant the right to the assistance of counsel for his defense. U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense.

11

*Strickland*, 466 U.S. at 687. An ineffective assistance of counsel claim may be raised with respect to errors made by trial counsel or direct appeal counsel, and both are governed by *Strickland*. *See, e.g.*, *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016).

The deficiency prong is met if no competent counsel would have taken the action that trial counsel took during the proceedings. *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). Regarding the prejudice prong, it is met if, but for counsel's deficient performance, the outcome of the proceeding would have been favorable. *Strickland*, 466 U.S. at 694. And yet, the error must also be "so serious" that the error "deprive[d] the defendant of a fair trial, a trial whose result is reliable[,]" in order to satisfy the prejudice prong. *Strickland*, 466 U.S. at 687.

B. Ground One: Misadvise on the Right to Testify

Petitioner claims counsel provided ineffective assistance for failing to advise him that it was his ultimate decision whether he testified or not. [ECF No. 1, at 5]; [ECF No. 1-1, at 2-5]. In support, Petitioner argues his attorney told him not to testify because the State could not prove premeditation. [ECF No. 1-1, at 2]. According to Petitioner, had he testified at trial, he would have testified that he planned only to douse the victim's car in gasoline and burn it; however, seeing the victim resulted in him having a "psychotic break[.]" [*Id.* at 3]. Such testimony as to Petitioner's "fury,"

12

as Petitioner submits, would have led a jury to find there was no premeditation. [*Id.*].

Alternatively, the testimony would have led the jury to find Petitioner acted in "heat

of passion." [ECF No. 1-1, at 4-5]. Lastly, as another alternative basis, Petitioner

submits such testimony would have shown he voluntarily abandoned whatever intent

he possessed due to Petitioner not completing the act of murder after the victim put

out the flames. [*Id.* at 3-4].

This claim, and its subparts, was raised in the state circuit court. [ECF No. 8-

1, at 122-24]. The state circuit court denied relief reasoning that Petitioner could not

show "a reasonable probability that any [proposed] testimony from the defendant

would have changed the outcome of trial." [ECF No. 8-1, at 172]. On appeal, the

Fourth District Court of Appeal affirmed the denial of relief without a reasoned

opinion. [*Id.* at 189]. Therefore, the claim was presumptively adjudicated on the

merits and is subject to § 2254(d)'s deferential standard of review. *See Richter*, 562

U.S. at 99-100; *Gill v. Mecusker*, 633 F.3d 1272, 1288-89 (11th Cir. 2011)

(acknowledging the well-settled principle that summary affirmances are presumed

adjudicated on the merits and warrant deference).

Ordinarily, because the last reasoned decision was made by the state circuit

court, this reasoning would be the presumptive basis for the state appellate court's

affirmance. *See Wilson*, 138 S. Ct. at 1192-94. Not so in this case. In affirming the

state circuit court's denial of relief, the reviewing panel unanimously concurred,

presumably to the outcome. [ECF No. 8-1, at 189]. As there is no reasoned opinion, and the record provides persuasive alternative reasoning, this Court should instead rely upon the "could have supported" standard articulated in *Richter*. S*ee Wilson*, 138 S. Ct. 1188, 1195-97 (explaining the *Richter* standard applies when there is no state court decision to "look through" and "when there is reason to think some other explanation for the state court's decision is more likely") (internal quotation marks omitted). Thus, this Court must determine whether there are any arguments or theories that "*could have supporte[d]* the state court's decision" and "ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision[.]" *Richter*, 562 U.S. at 102 (emphasis added).

The record shows there was an obvious, valid ground for affirmance. *See Wilson*, 138 S. Ct. at 1196 (discussing the "could have supported" approach). At the state circuit court level, the State argued Petitioner could not show prejudice. [ECF No. 8-1, at 139-40]. First, Respondent relied upon the testimony of the other witnesses at trial. [*Id.* at 139]. Responded next pointed out that, had Petitioner testified at trial, the State would have been able to cross examine him about his behavior toward the victim in the months leading up to the attack. [*Id.*]. The State also would have been able to inquire why Petitioner did not bring his child if he only intended to burn a car. [*Id.*]. Lastly, if Petitioner only intended to burn a vehicle, as

14

Respondent argued, Petitioner would have had to explain why he brought both a knife and a gas can to burn a vehicle. [*Id.*].

Importantly, Petitioner's Rule 3.850 Motion, his Reply at the state circuit court level, and his appeal did not address these points. Petitioner, therefore, failed to respond to the arguments or theories presented at the state court level. Consequently, fair-minded jurists could not disagree that those arguments or theories on the prejudice prong were inconsistent with Supreme Court holdings. *See Richter*, 562 U.S. at 102. As Petitioner cannot satisfy § 2254(d)'s deferential standard with respect to the prejudice prong, this claim and all of its subparts must be denied. Finally, this Court need not address the state appellate court's analysis of the deficiency prong. *See Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1100 (11th Cir. 2007).

C. Ground Two

As his second ground for relief, Petitioner contends Counsel was ineffective for failing to pursue a heat of passion or voluntary abandonment defense. [ECF No. 1, at 7]. This claim was raised in the state circuit court. [ECF No. 8-1, at 125-26]. The state circuit court denied relief concluding that Petitioner failed to show he was prejudiced by Counsel's decisions. [ECF No. 8-1, at 172]. The Fourth District Court of Appeal affirmed the denial of relief without a reasoned opinion on appeal. [*Id.* at 189]. Presumptively, therefore, this claim was adjudicated on the merits and is

subject to § 2254(d)'s deferential standard of review. *See Richter*, 562 U.S. at 99-100.

Although the state circuit court is the last reasoned decision, the Fourth District Court of Appeal unanimously concurred. [ECF No. 8-1, at 189]. There is, therefore, no reasoned opinion to explain the state appellate court's basis for denying relief. This Court must consequently turn to the "could have supported" standard set forth in *Richter* to resolve this claim. *See Wilson*, 138 S. Ct. at 1195-96.

Respondent's Response at the state circuit court level provides a persuasive basis as to what could have supported the appellate court's decision to affirm the denial of relief. At the state circuit court level, Respondent asserted that Petitioner could not show prejudice. In support, Respondent argued Petitioner's proposed testimony would not have persuaded a jury that "sudden provocation" existed for a heat of passion defense and Petitioner did not renounce his decision before committing the crime for a voluntary abandonment defense. [ECF No. 8-1, at 141-42].

### i. Heat of Passion

Under Florida law, a heat of passion defense requires a defendant to have adequate provocation, which is met if the circumstances might obscure the reason of or dominate the volition of an ordinary reasonable man. *Douglas v. State*, 652 So. 2d 887, 891 (Fla. 4th DCA 1995). In applying this defense, Florida courts typically

consider whether the provocation was sudden and whether defendant's criminal response occurred immediately upon being provoked. *See, e.g.*, *Paz v. State*, 777 So. 2d 983, 984 (Fla. 3d DCA 2000) (holding heat of passion defense applicable where defendant "immediately" stabbed the victim upon surmising the victim sexually assaulted defendant's wife).

In his Rule 3.850 Motion, Petitioner averred that he endured "emotional stress" and a "slow mental decline" caused by the victim's alleged infidelity and the physical abuse she inflicted upon him. [ECF No. 8-1, at 125]. In 2011 and into January 2012, Petitioner repeatedly accused the victim of cheating on him. [ECF No. 9-1, at 218, 221]. The crime transpired on June 11, 2012. [ECF No. 9-1, at 246-47]. The highest state court, therefore, likely found a reasonable person would not be suddenly provoked to act in a heat of passion after months of suspicions, particularly when there was no credible evidence of infidelity on the victim's part. With that understanding of the record, the highest state court could have concluded that Petitioner could not show a reasonable probability of a different outcome, as a heat of passion defense was tenuous. Fair-minded jurists could not deem those arguments or theories, on the prejudice prong, inconsistent with Supreme Court holdings. *See Richter*, 562 U.S. at 102. Consequently, Petitioner cannot prove the state court's resolution of the prejudice prong violated § 2254(d). This subclaim should,

17

therefore, be denied. This Court need not address the deficiency prong. *See Dingle*, 480 F.3d at 1100.

### *ii. Voluntary Abandonment*

In the alternative, Petitioner argued his counsel was ineffective for not arguing a voluntary abandonment defense because Petitioner did not complete the act of murder with a knife or re-ignite the victim after she was able to put out the flames.

Although Florida law recognizes the common-law defense of abandonment, *see* Fla. Stat. § 777.04(5)(a), involuntary abandonment will not serve as a defense. *Carroll v. State*, 680 So. 2d 1065, 1066 (Fla. 3d DCA 1996). Thus, if a defendant fails to complete a crime due to unanticipated difficulties in carrying out the criminal plan, an involuntary abandonment occurred. *Id.* (quoting 2 Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law § 6.3(b), at 53-54 (1986)).

Here, even if Petitioner fled after the victim put out the flames, Petitioner had already completed some degree of attempted murder. The mere fact that Petitioner did not complete the act of murder when unanticipated events prevented the completion of that murder does not qualify as voluntary abandonment under Florida law. *See Carroll*, 680 So. 2d at 1066. This this reasoning could have supported the highest state court's denial of relief in concluding there was no prejudice, and fair-minded jurists could not view those arguments or theories inconsistent with Supreme Court holdings. *See Richter*, 562 U.S. at 102. Petitioner thus cannot meet his burden

under § 2254(d). This subclaim should, therefore, be denied. This Court need not address the deficiency prong. *See Dingle*, 480 F.3d at 1100.

D. Ground Three

In Ground Three, Petitioner contends counsel was ineffective during the guilt and penalty phases for failing to investigate his mental health. [ECF No. 1, at 8]. At the guilt phase, as Petitioner argues, his counsel could have argued that he was guilty by reason of insanity. [*Id.*]. As to the penalty phase, Petitioner submits his counsel should have argued that his mental health issues would have served as mitigating factors. [*Id.*]. Both claims were raised in Petitioner's Rule 3.850 Motion and on appeal to the Fourth District Court of Appeal. [ECF No. 8-1, at 127-28, 182-83]. Like the previous claims addressed in this Report, the Fourth District Court of Appeal's concurrence indicates it only accepted the conclusions of the state circuit court's denial of relief. *See* [ECF 8-1, at 189]. As such, the unreasoned opinion constitutes as an adjudication on the merits. *See Richter*, 562 U.S. at 99-100. However, in applying § 2254(d), the Court must turn to the *Richter* standard to understand what "could have supported" the highest state court's reasoning because there is neither a reasoned decision by the Fourth District Court of Appeal or an acceptance of the reasoning below. *See Wilson*, 138 S. Ct. at 1195-97.

*i. Guilt Phase*

In order to address whether there was a reasonable probability of a different outcome had an insanity defense been pursued, it requires an understanding of Florida law. Under Florida law, insanity is established if two requirements are met. First a defendant must show existence of a mental infirmity, disease, or defect. Fla. Stat. § 775.027(1)(a). Second, a defendant must show they either "did not know what he or she was doing or its consequences" or "the defendant did not know that what he or she was doing was wrong." Fla. Stat. § 775.027(1)(b). Defendants have the burden of proving this defense by clear and convincing evidence. Fla. Stat. § 775.027(2).

Petitioner's conduct before, during, and after the crime could have supported a conclusion that he would not have been able to prove an insanity defense. As previously mentioned, Petitioner made threatening remarks one month prior to the incident. Petitioner later called Ms. Bretton's uncle and left a voicemail stating Ms. Bretton was "playing with fire" the day before the incident. Ms. Bretton testified that Petitioner soaked her hair, skin, and clothing in gasoline. Petitioner then chased Ms. Bretton after she escaped. While the two struggled on the floor, Petitioner reached into his pockets twice in order to ignite a lighter and set Ms. Bretton on fire. Afterwards, Petitioner repeated that he was dead or indicated that he wanted to be killed.

Together, it supports an inference that Petitioner knew what he was doing and that he knew his actions were wrong, rendering an insanity defense unlikely to succeed. As such, it appears the Fourth District Court of Appeal likely relied upon the factual record to conclude there was no prejudice. *See Richter*, 562 U.S. at 102. Reliance on those arguments or theories would not be inconsistent with the holding in a prior Supreme Court decision, meaning Petitioner failed to meet his burden under § 2254(d). *See id.* This Court need not address the deficiency prong. *See Dingle*, 480 F.3d at 1100.

### *ii. Penalty Phase*

As a reminder, Petitioner suggests the sentencing court would have imposed a less onerous sentence had counsel investigated and relied upon his alleged mental health issues. At sentencing, Petitioner's trial counsel argued for a 9-year sentence whereas the State argued for life imprisonment. [ECF No. 9-1, at 422]. Ms. Bretton requested that the sentencing court include some form of psychiatric assistance. [*Id.* at 428]. Petitioner's trial counsel relied upon Petitioner's "emotional and mental health problems" that were the result of "an extremely dysfunctional relationship." [*Id.* at 439]. Petitioner's trial counsel also relied upon an alleged head or brain injury that occurred in Haiti. [*Id.* at 433-34]. The record reflects, therefore, that the sentencing court was aware of Petitioner's potential mental health issues.

Given that the sentencing court had a wide sentencing range, and that it imposed a life sentence despite the various references to Petitioner's mental health, the Fourth District Court of Appeal's silent concurrence likely concluded Petitioner was unable to show a reasonable probability of a different outcome at sentencing. Reliance on such arguments could have supported the outcome as to the prejudice prong, and it would not be inconsistent with Supreme Court precedent. *See Richter*, 562 U.S. at 102. Petitioner, therefore, cannot meet his burden under § 2254(d). *See id.* As such, because this claim could be denied by reviewing the prejudice prong, the Court need not address the highest state court's resolution of the deficiency prong. *See Dingle*, 480 F.3d at 1100.

E. Ground Four: Failure to Convey Plea

In Ground Four, Petitioner contends his counsel was ineffective for failing to convey a 15-year plea offer that Petitioner alleges he would have accepted. [ECF No. 1, at 10]; [ECF No. 1-1, at 13-14]. Petitioner asserts the only offer he was informed of was a 20-year plea offer. [ECF No. 1-1, at 13].

This claim was raised in Petitioner's Rule 3.850 Motion before the state circuit court and appears to have been raised in the Fourth District Court of Appeal. [ECF No. 8-1, at 128-29, 185-86]. As the Fourth District Court of Appeal provided an unreasoned affirmance of the denial of relief, the claim was presumptively adjudicated on the merits by the highest state court and is subject to § 2254(d). *See,*

22

*e.g.*, *Richter*, 562 U.S. at 99. However, like the other claims at issue in this case, the Fourth District Court of Appeal appears to have concurred only as to the outcome. [ECF No. 8-1, at 189]. The Court must, therefore rely upon the "could have supported" standard set forth in *Richter* to determine what was the highest state court's reasoning. S*ee Wilson*, 138 S. Ct. 1188, 1195-97.

At the state circuit court level, Respondent relied upon trial counsel's statement that Petitioner rejected "a 15[-]year plea offer made prior to trial" as evidence that Petitioner in fact rejected the plea offer. [ECF No. 8-1, at 146] (citing [ECF No. 9-1, at 439]). The state circuit court also relied upon this fact, presumably as evidence that the record refutes Petitioner's claim. [ECF No. 8-1, at 174].

While an evidentiary hearing or an opportunity to amend may have been ordered by some judges on this claim, the purpose of federal habeas review "is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F. 3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)) (quotation marks omitted)). This purpose, and by implication AEDPA, is consistent with the foundational principle of our federalist system of government: "State courts are adequate forums for the vindication of federal rights." *See Burt v. Titlow*, 571 U.S. 12, 20 (2013).

This claim, reviewed through the *Richter* lens, presents two limited questions: whether the arguments or theories presumably relied upon by the Fourth District Court of Appeal "*could have supporte[d]* [its] decision" and "whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision[.]" *See Richter*, 562 U.S. at 102 (emphasis added).

Trial counsel's statement about Petitioner's rejection of a 15-year plea offer, coupled with the fact that Petitioner never voiced disagreement at sentencing, may support an inference that Petitioner in fact rejected the plea offer. As there is little else that could have supported a denial of relief on appeal, without providing an opportunity to amend or for evidentiary development, the Court must presume that the Fourth District Court of Appeal relied upon this line of reasoning. S*ee Wilson*, 138 S. Ct. 1188, 1195-97. Such reasoning does not rise to the level of being inconsistent with the holding in a prior Supreme Court Decision. *See Richter*, 562 U.S. at 102. Consequently, Petitioner cannot meet his burden under § 2254(d) with respect to the prejudice prong. The deficiency prong need not be reviewed. *See Dingle*, 480 F.3d at 1100.

F. Ground Five: Vindictive Sentencing

In Ground Five, Petitioner claims the sentencing court imposed a vindictive sentence of life imprisonment because he exercised his constitutional right to proceed to trial. [ECF No. 1, at 12]; [ECF No. 1-1, at 15-16].

Although sentencing issues related to state law are not cognizable for federal habeas review, *see Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988), claims that a sentence was motivated by vindictiveness on the part of the sentencing judge may be considered on habeas review. *See generally Ford v. Sec'y, Fla. Dep't of Corr.*, No. 3:13-CV-430-J-34MCR, 2016 WL 4247638, at *8 (M.D. Fla. Aug. 11, 2016) (citing *Texas v. McCullough*, 475 U.S. 134, 137 (1986)), aff'd, 725 F. App'x 785 (11th Cir. 2018).

At the state circuit court level, Respondent argued this claim was procedurally defaulted and that it should be denied on the merits. [ECF No. 8-1, at 146-47]. The state circuit court in turn found that this claim was procedurally defaulted and appears to have concluded there is "no legal basis" to support the merits. [ECF No. 8-1, at 175]. As the Fourth District Court of Appeal did not provide a reasoned decision as to this claim and concurred [*Id.* at 189], the Court must turn to the *Richter* standard, as previously mentioned.

### i. Procedural Default

For a procedural default to be applicable, a state court's procedural ruling qualifies as "independent and adequate state law grounds" if: (1) the last state court

25

rendering a judgment in the case "clearly and expressly" relied upon "state procedural rules to resolve the federal claim without reaching the merits"; (2) the state court's decision "rest[s] solidly on state law grounds" and is not "intertwined with an interpretation of federal law"; and (3) the state procedural rule is not "applied in an arbitrary or unprecedented fashion." *Mason v. Allen*, 605 F.3d 1114, 1119-20 (11th Cir. 2010) (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)).

In *Coleman v. Thompson*, the United States Supreme Court acknowledged that the lack of an express statement of procedural default is "not very informative." 501 U.S. 722, 738-39 (1991), *modified on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012). Thus, whether a decision rests on another basis is a question that arises only if a state court judgment "rested primarily on federal law or was interwoven with federal law" in such a way that would give a federal court "good reason to question whether there is an independent state ground for the decision." *Id.*

Here, it does not "fairly appear" that the Fourth District Court of Appeal rested primarily on federal law or was interwoven with federal law. *See id.* at 739-40. Instead, the procedural default was quite obvious under independent and adequate state law grounds and in light of the arguments raised by Respondent in the state circuit court.

To be considered "adequate," the state procedural rule must be "firmly established and regularly followed." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). If it

appears the procedural rule was applied in an "arbitrary, unprecedented, and manifestly unfair fashion," the independent state law ground is inadequate and cannot preclude federal review. *See Judd*, 250 F.3d at 1313. Conversely, federal review is foreclosed if the independent state law ground is adequate. *See id.*

The First District Court of Appeal and the Second District Court of Appeal have held that claims of vindictive sentencing ordinarily should be preserved at trial and then raised on direct appeal. *Baxter v. State*, 127 So. 3d 726, 732 (Fla. 1st DCA 2013) (citing *Mendez v. State*, 28 So. 3d 948, 950 (Fla. 2d DCA 2010)). It appears the Fifth District Court of Appeal has similarly held that such claims should be lodged in the trial court but has indicated such claims may be proper in a Rule 3.800 motion given the right circumstances. *See generally Rosado v. State,* 129 So. 3d 1104, 1108 (Fla. 5th DCA 2013). The Undersigned is unaware of any Florida court permitting claims of vindictive sentencing to be raised in a Rule 3.850 Motion, however. Petitioner has not identified such a case throughout these proceedings. Thus, because Petitioner raised this claim in his Rule 3.850 Motion, this claim was procedurally defaulted and is not entitled to a merits review absent some equitable exception.

*ii. Cause and Prejudice*

27

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." *Jones v. Campbell*, 436 F.3d 1285, 1304 (11th Cir. 2006).

Where there was "something external" that cannot "fairly be attributed" to the litigant's conduct, which impeded a litigant's efforts to comply with the procedural rule, cause exists. *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (relying upon *Coleman*, 501 U.S. at 753). "To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Alabama Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017) (quoting *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003)) (internal quotations omitted). The Court need not address cause because Petitioner is unable to prove prejudice.

"The imposition of a longer sentence than a defendant would have received had he pleaded guilty does not automatically amount to punishment" as a result of a defendant "exercising his right to stand trial." *Creed v. Dep't of Corr.*, 330 F. App'x 771, 773 (11th Cir. 2009) (citing *Frank v. Blackburn*, 646 F.2d 873, 882-83 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. Jan. 1981)). "A trial judge may reasonably increase a defendant's sentence after trial because the trial gives the judge the benefit of hearing testimony, becoming aware of the facts of

the case, and understanding 'the flavor of the event and the impact upon any victims.'" *Creed*, 330 F. App'x at 773 (quoting *Frank*, 646 F.2d at 885).

Petitioner points to nothing in the record affirmatively proving the sentencing court's bias. Rather, he encourages this Court to indulge pure speculation that some vindictive intent existed because the sentence was harsher than requested by the victim or then offered during plea negotiations. As such, because a more onerous sentence compared to an earlier-made plea offer is often the result of not entering a plea deal, Petitioner has failed to adequately prove vindictive intent.

### iii. Fundamental Miscarriage of Justice and Actual Innocence

"If a petitioner cannot show cause, he may still survive a procedural bar by proving that the failure to hear the merits of his claim would endorse a fundamental miscarriage of justice." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (relying upon *Murray*, 477 U.S. at 495). Under this miscarriage-of-justice exception, "actual innocence, if proved, serves as a gateway through which a [§ 2254] petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (relying upon *House v. Bell*, 547 U.S. 518 (2006) and *Schlup v. Delo*, 513 U.S. 298 (1995)).

To qualify under this exception, petitioners must show that, in light of the new evidence, no reasonable juror would have voted to find petitioner guilty beyond a reasonable doubt. *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).

"Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation" will not allow a federal court to review the procedurally barred claim through this exception. *Schlup*, 513 U.S. at 316.

Petitioner does not dispute that he actually set Ms. Bretton on fire. At best, he challenges his legal innocence. He also does not rely upon any fresh evidence of his actual innocence. As Petitioner cannot show that all reasonable jurors would find him not guilty beyond a reasonable doubt, this equitable exception is inapplicable to him. Consequently, as no equitable exception applies, this claim is procedurally defaulted and cannot be reviewed for federal habeas review.

## IX. Evidentiary Hearing

Pursuant to 28 U.S.C. § 2254(e)(2), federal courts "shall not hold an evidentiary hearing" "unless the application shows" that his claim relies upon "a new rule of constitutional law, made retroactive to cases on collateral review" or "a factual predicate that could not have been previously discovered through the exercise of due diligence[.]" In addition, "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). As Petitioner cannot meet this burden, the Court cannot grant a hearing. *See, e.g.*, *Cullen v. Pinholster*, 563 U.S. 170, 184-86 (2011)

(reasoning a federal evidentiary hearing is barred even if § 2254(d)'s deferential bar does not apply).

## X. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

"Where a district court has rejected a petitioner's constitutional claims on the merits," "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). If, however, "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," COA should not issue unless the prisoner shows "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Reasonable jurists would not find the merits or procedural rulings in this Report debatable. The Court should, therefore, not issue a COA.

## XI. Conclusion

Based upon the foregoing it is recommended that:

1.      the federal habeas petition be DENIED [ECF No. 1];

2.      an evidentiary hearing be DENIED;

3.      a certificate of appealability should NOT ISSUE; and,

4.      the case CLOSED.

Objections to this report may be filed with the District Court Judge within fourteen (14) days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the District Court Judge of an issue covered in this Report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court Judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

DONE AND ORDERED at Miami, Florida this 23rd day of September, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:
　　　　Roosevelt Mondesir
　　　　W46720
　　　　New River Correctional Institution
　　　　Inmate Mail/Parcels
　　　　PO Box 900

Raiford, FL 32083
PRO SE

Matthew Steven Ocksrider
Office of the Attorney General
Criminal Appeals
1515 North Flagler Drive (Suite 900)
West Palm Beach, FL 33401
(561) 837-5000
Email: matthew.ocksrider@myfloridalegal.com

Noticing 2254 SAG Broward and North
Email: CrimAppWPB@MyFloridaLegal.com